**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PHILOMENE LONG, surviving spouse
and heir-at-law of JOHN THOMAS
IDLET, deceased,
          *Plaintiff-Appellant,*

v.

COUNTY OF LOS ANGELES,
          *Defendant-Appellee.*

No. 04-55463

D.C. No.
CV 03-00531 DSF
(PLAx).

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
December 5, 2005—Pasadena, California

Filed March 28, 2006

Before: Stephen Reinhardt and Johnnie B. Rawlinson,
Circuit Judges, and Claudia Wilken*, District Judge.

Opinion by Judge Wilken

*The Honorable Claudia Wilken, United States, District Judge for the
Northern District of California, sitting by designation.

**COUNSEL**

Robert Berke, Law Offices of Robert Berke, Santa Monica, California, for the plaintiff-appellant.

Mildred O'Linn and Janine McMillion, Manning & Marder Kass, Ellrod, Ramirez, LLP, Los Angeles, California for the defendant-appellee.

Martin Stein, Alison Turner and Eric R. Cioffi, Greines, Martin, Stein & Richland, LLP, for the defendant-appellee.

**OPINION**

WILKEN, Disrict Judge:

John Thomas Idlet, the decedent, reported to the Los Angeles County Jail on March 11, 2002, to begin a 120-day jail sentence. Mr. Idlet was seventy-one years old and suffered from congestive heart failure and other ailments. Over the next eighteen days Mr. Idlet's medical condition deteriorated. Although nurses saw him several times during that period,

there is no record of a doctor's examination until the early morning of March 29, 2002, hours before he died of cardiac arrest.

Mr. Idlet's wife, the Plaintiff and Appellant in this action, filed a complaint, based on 42 U.S.C. § 1983. The district court dismissed all of the claims against all of the defendants except the County, against whom Appellant asserted municipal liability for failing adequately to train jail medical staff and failing to implement necessary medical policies, leading to the denial of adequate medical care which resulted in Mr. Idlet's death. The County moved for summary judgment.

The district court granted the County's motion and found that, while a triable issue of fact existed as to whether jail medical staff had deprived Mr. Idlet of constitutionally adequate medical care, summary judgment as to the County was appropriate because, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Appellant had failed to raise a triable issue as to whether the County had a policy of deliberate indifference to prisoners' medical needs. Appellant appeals the district court's grant of summary judgment, arguing that triable issues of fact exist on the matter of municipal liability.

We hold that Appellant has presented sufficient evidence to create a triable issue regarding the County's liability for Mr. Idlet's death. Accordingly, we reverse the district court's order granting summary judgment and remand for further proceedings.

## FACTUAL BACKGROUND

Except as noted, the following facts are undisputed.[1] On

---

[1]The statement of facts is drawn from the County's Separate Statement of Undisputed Facts filed in support of the motion for summary judgment, which the district court found to be uncontroverted, and from the facts stated in Appellant's responses to the County's undisputed facts, which the district court accepted as true for purposes of the motion.

March 11, 2002, when the seventy-one year old Mr. Idlet reported to the County Jail to begin serving his 120-day jail sentence, he weighed more than 350 pounds and, as noted above, suffered from congestive heart failure and other ailments. From 1998 until March 11, 2002, Mr. Idlet had been under the care of Dr. Kenneth Rosenfeld of the Veterans Administration Greater Los Angeles Healthcare System (VA). During that period Dr. Rosenfeld closely monitored Mr. Idlet's condition and adjusted his medications in conjunction with an overall care plan that included supervised exercise and diet. While under Dr. Rosenfeld's care Mr. Idlet had no major hospitalizations or complications of his illness.

On March 7, 2002, four days before Mr. Idlet reported to the County Jail, his attorney wrote a letter to the Director of the County Jail Medical Services Division, explaining Mr. Idlet's medical condition and his need for monitoring, listing his medications and noting Dr. Rosenfeld's assessment "that without close supervision of both medication and exercise, Mr. Idlet's death will be imminent." On March 11, 2002, the date Mr. Idlet was admitted to the County Jail, the committing superior court judge issued an order directing the County Jail to provide Mr. Idlet with a medical examination and to advise the court of the results. The court attached to the order two letters from Dr. Rosenfeld which outlined Mr. Idlet's medical needs.

On March 12, 2002, Mr. Idlet was transferred to the hospital ward at the County Jail. On that same day a jail physician ordered that he be transferred to the County Jail's Medical Services Bureau (MSB), a correctional treatment facility designated to provide health care to prisoners who do not require acute care services but are in need of professionally supervised health care. The MSB is not a licensed acute care facility. It is not staffed with physicians around the clock—they are present from 6:00 a.m. until 8:00 p.m. on weekdays, and during the remaining hours and on weekends a physician is on

call—and in 2002 it did not have cardiac monitors or a radiologist available.

Mr. Idlet was admitted to the MSB on March 13, 2002. The nurses were instructed to monitor him for any changes in mental, sensory and motor functions, to assess him for signs and symptoms of acute cardiac distress such as chest pains and shortness of breath, and to notify a doctor as needed.

The parties differ in their characterization of the care received by Mr. Idlet while he was in the MSB. The County asserts that the conditions in the MSB were "not essentially different from being in a hospital bed in a hospital facility," and that the MSB medical staff consistently took care of Mr. Idlet's medical needs. Appellant presents affidavits, deposition testimony and other evidence to support the assertion that Mr. Idlet's care was inadequate, and highlights the following facts.

Upon admission to the MSB on March 13, Mr. Idlet was not assigned promptly to a bed and was forced to wait for thirty-eight hours in a wheelchair, during which time he did not receive his required medications. On March 15, the nurse called the on-call physician with a report that Mr. Idlet's feet were red and swollen with 3+ edema[2]; however, a physician did not see him. On March 18, the nurse recorded that Mr. Idlet was short of breath with labored respiration and a pulse of 100 beats per minute, but the nurse did not call the doctor. On March 19, the nurse recorded that Mr. Idlet claimed he got short of breath when walking a short distance and that both of his feet were swollen and slightly red, but the nurse did not refer him to a doctor.

On March 21, Mr. Idlet asked to be seen by the doctor

_____

[2]Swelling of the extremities which results from congestive heart failure is called peripheral edema. According to the declaration of Appellant's expert, Dr. Alberta Warner, the most severe level of swelling is 4+.

because "[m]y leg is getting worse, "and the nurse recorded that he had "an enlarged abdomen, hard to touch. Noted both lower legs swollen with redness to the feet. (Pitting edema)." Later in the day the nurse recorded increased swelling and placed Mr. Idlet on the doctor's line for evaluation, but a doctor did not see him that day. On March 22, Dr. Wallace entered a progress note that Mr. Idlet's dose of Lasix (a diuretic) was increased. The progress note does not indicate that Mr. Idlet was actually seen by a physician.

On March 25, Mr. Idlet's medications were withheld without reason. On March 26, the nurse recorded that Mr. Idlet's left foot was red and swollen and that he was coughing. A physician was called but did not see Mr. Idlet, who was instead referred for evaluation to the medical line, where his heart rate was recorded as 115. Shortly thereafter Mr. Idlet was seen by Dr. Wallace who recorded right leg swelling but did not mention the increased heart rate.

On March 28, Mr. Idlet fell while trying to get to the bathroom. There is no documented examination by a doctor and only a skin examination was conducted by the nurse, even though Mr. Idlet was on Coumadin, a blood thinner, and so would be at risk for internal bleeding after a fall. Approximately five hours later the nurse recorded that Mr. Idlet was "very swollen," that he had a bedsore on his tailbone, and that he was short of breath. The nurse's notes state that Mr. Idlet was seen by a doctor but there are no doctor's notes. Mr. Idlet was placed on high flow oxygen. At 8:03 p.m. on March 28, Mr. Idlet refused further oxygen therapy although it was offered to him by a nurse. The nurse's notes state that Mr. Idlet refused oxygen and then was presented with a release from responsibility, which he signed.

At 9:34 p.m. on March 28, the nurse recorded that Mr. Idlet had "low brown urine output" and bilateral crackles on the lung fields, but no doctor was called. According to Appellant's expert doctors, Dr. Alberta Warner, the chair of the car-

diology department at the VA, and Dr. Rosenfeld, Mr. Idlet's treating physician at the VA, these signs indicate decompensated congestive heart failure. Less than one hour later, Mr. Idlet was found on the floor, having defecated on himself; three staff members were unable to get him back on the bed. The nurse's notes state that Mr. Idlet had severe ascites, or fluid, in the belly, which hindered moving him; still, no doctor came to examine him. Because the medical staff was unable to move him from the floor to his bed, Dr. Johnson, without seeing Mr. Idlet, ordered him to be moved from the floor onto an eggcrate mattress.

On March 29, the nurse recorded findings of congestive heart failure (diminished breath sounds, moist coughing, shortness of breath), a severe decrease in oxygen saturation and low blood pressure. Dr. Johnson was called and ordered Mr. Idlet's transfer to the hospital by ambulance, which occurred at 12:44 a.m. Mr. Idlet suffered cardiac arrest and died at the hospital on March 29 at 2:56 p.m. The autopsy report states that Mr. Idlet died from decompensated congestive heart failure and pulmonary edema.

When Mr. Idlet was in the MSB, written County Jail policies required physicians to write, sign and date all orders; to complete an admitting order outlining the level of care, diet, diagnosis, and level of activity for the inmate; to re-evaluate the inmate at least every thirty days or upon change of attending physician and upon transfer; to complete medical record progress notes at least every three days; and to complete a written history and physical examination of the inmate. Written policy also required registered nurses to write admission notes; to identify the inmate's care needs based upon an initial written and continuing assessment, with input as necessary from health professionals involved in the inmate's care; to develop an individual written patient care plan; to review, evaluate and update the patient care plan, as necessary; to document implementation of the care plan, the inmate's response to care, and changes in the inmate's symptoms of

behavior; and to document on every shift the inmate's physical condition, mental status, lab data or any other pertinent medical findings. With respect to both doctors and nurses, written County Jail policy provided, "All persons within each discipline shall adhere to State licensing regulations governing the policy and procedures of Medical Services."

According to the depositions of MSB medical staff and written jail policies, whether an inmate should be transferred to another facility depends on the judgment of the physician reviewing the inmate's health status and any transfer must be ordered by a physician. If an inmate suffers from an unstable acute medical problem, transfer to the Los Angeles County Medical Center is required. When such conditions as chest pain and acute onset or exacerbations of shortness of breath are present, immediate emergency transport by a 911 paramedic is required.

## PROCEDURAL BACKGROUND AND JURISDICTION

Appellant filed her complaint originally in Los Angeles County Superior Court. The complaint alleged a violation of 42 U.S.C. § 1983 and State law claims for negligence and negligent hiring. The County, Does 1-20 and four individuals were named as defendants. The County removed the action to the district court, and the district court dismissed the case against all defendants except the County. Subsequently, the district court permitted Appellant to amend the complaint to assert State law claims of negligence against two County Jail doctors.

After the district court granted the County's motion for summary judgment on the § 1983 claim and dismissed the action as to the County, the remaining complaint contained only State law claims which, pursuant to stipulation of the parties under 28 U.S.C. § 1367(c)(3), the district court dismissed without prejudice. Appellant filed a timely notice of appeal. This court has jurisdiction over the appeal under 28

U.S.C. § 1291 because the order appealed from is a final decision of the district court.[3]

## STANDARD OF REVIEW

We review de novo the district court's order granting summary judgment. *See Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004). This court's review is governed by the same standard used by the district court under Federal Rule of Civil Procedure 56(c). *Suzuki Motor Corp. v. Consumers Union, Inc.*, 330 F.3d 1110, 1131 (9th Cir.), *cert. denied*, 540 U.S.

---

[3]A separate judgment on the order granting summary judgment was not issued, as required by Federal Rule of Civil Procedure 58(a)(1), and entered on the docket, as required by Federal Rule of Civil Procedure 79(a). However, "neither the Supreme Court nor this court views satisfaction of Rule 58 as a prerequisite to appeal." *Casey v. Albertson's, Inc.*, 362 F.3d 1254, 1258 (9th Cir.), *cert. denied*, 543 U.S. 870 (2004) (quoting *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1140 (9th Cir. 2003)). Rather, where the district court's order is a full adjudication of the issues and clearly evidences the judge's intention that it be the court's final act in the matter, the filing of an appeal, in conjunction with the parties proceeding before the appellate court as if a separate judgment had been entered, indicates an acknowledgment by the parties that a final judgment has been entered. *Id.* at 1259. A mechanical application of Rule 58 is not required when the parties and the judge all have indicated that they treat a district court entry as a final, separate judgment. *Id.*

Here, the district court's March 5, 2004, order granting summary judgment fully adjudicated all claims against the County. Three days later, on March 8, 2004, the district court dismissed the remaining supplemental claims against the individual defendants, thus terminating the action. On March 9, 2004, Appellant filed her notice of appeal. The parties have proceeded as if a separate judgment had been entered. Accordingly, Rule 58 does not require dismissal of the appeal. Moreover, the appeal is timely because the entry of judgment became effective 150 days after entry of the district court's order granting summary judgment. *See Ford v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d 1076, 1081 (9th Cir. 2005). The fact that Appellant filed her notice of appeal *before* the entry of judgment under the terms of Rule 58 is not problematic; Federal Rule of Appellate Procedure 4(a)(2) provides that the filing of a premature notice of appeal " 'is treated as filed on the date of and after the entry.' " *Id.* (quoting Fed. R. App. P. 4(a)(2)).

983 (2003). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.*

The moving party has the burden of showing the absence of any genuine issue of fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970). To defeat summary judgment the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the non-moving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

**[1]** "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged viola-

tion was committed by a person acting under the color of State law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**[2]** Municipalities are "persons" under 42 U.S.C. § 1983 and thus may be liable for causing a constitutional deprivation. *Monell,* 436 U.S. at 690. A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents, however. *Id.* at 694. Instead, it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible. *Id.* A policy is " 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' " *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (per curiam) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986)).

**[3]** A policy can be one of action or inaction. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Under *Canton*, a plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation. *Id.* at 387-89. To impose liability against a county for its failure to act, a plaintiff must show: (1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights. *Gibson v. County of Washoe*, 290 F.3d 1175, 1193-94 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003).

## A.   Deprivation of a Constitutional Right

**[4]** In the present case, the district court concluded that Appellant had raised a genuine issue of triable fact regarding

whether MSB medical staff acted with deliberate indifference to Mr. Idlet's serious medical needs, in violation of the Eighth Amendment. This finding is not disputed by either party. Thus, Appellant has alleged facts from which a jury could find that Mr. Idlet suffered a constitutional deprivation.

## B.   Deliberate Indifference

Appellant alleges that the County is liable for deliberate indifference to Mr. Idlet's serious medical needs because of its policies of inaction in the following areas: (1) its failure adequately to train MSB medical staff, and (2) an absence of adequate general policies to guide the medical staff's exercise of its professionally-informed discretion.

### 1.   Failure to train

[5] A municipality's failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact. *See Canton*, 489 U.S. at 388. The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy. *Id.* at 390.

In *Board of County Commissioners v. Brown*, 520 U.S. 397 (1997), the Supreme Court discussed the circumstances under which inadequate training can be the basis for municipal liability. The first is a deficient training program, "intended to apply over time to multiple employees." *Id.* at 407 (citation omitted). The continued adherence by policymakers "to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* (citation omitted). Further, "the existence of a pattern of tortious conduct by inadequately trained employees may tend to

show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id.* at 407-08 (citation omitted).

A plaintiff also might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* at 409. The *Brown* Court explained:

> The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.

*Id.*

In the present case, the district court found that Appellant had not shown that County policy was the cause of Mr. Idlet's injuries because she had not presented evidence that the County knew or should have known that its failure to train its employees would likely result in a constitutional violation. Rather, the court found, the evidence showed at most that an individual health care provider may have acted negligently in the care of a single patient. The district court further concluded that, even if liability could be found based on an isolated incident, the County's policy of leaving medical decision-making up to trained medical personnel did not constitute a policy of deliberate indifference.

### a.   Reliance on trained medical professionals

The County argues that, as a matter of law, a policy of reliance upon the trained professional doctors and nurses who worked in the MSB cannot amount to deliberate indifference because the alleged deficiencies identified by Appellant fall within the province of medical and nursing schools, and nothing in the record suggests that the County had reason to believe the professional medical training received by the MSB doctors and nurses was deficient. This argument is contrary to this court's case law, which holds that, even where trained professionals are involved, a plaintiff is not foreclosed from raising a genuine issue of triable fact regarding municipal liability when evidence is presented which shows that the municipality's failure to train its employees amounts to deliberate indifference. Indeed, the County's argument would allow municipalities to insulate themselves from liability for failing to adopt needed policies by delegating to trained personnel the authority to decide all such matters on a case by case basis, and would absolve the governmental agencies of any responsibility for providing their licensed or certified teachers, nurses, police officers and other professionals with the necessary additional training required to perform their particular assignments or to implement the agency's specific policies.

[6] In *Miranda v. Clark County*, 319 F.3d 465 (9th Cir. 2003) (en banc), this court clarified that a municipality may be charged with the failure to train even where trained professionals are involved. The plaintiff, a former defendant whose capital murder conviction was overturned on collateral review on grounds of ineffective assistance of counsel, sued the county's public defender's office under § 1983 for implementing policies which led to his wrongful conviction. The complaint alleged that the county had a policy of assigning the least experienced attorneys to capital cases without providing any training, thus demonstrating callous indifference to the defendant's constitutional rights. *Id.* at 471. The county

argued that, as a matter of law, there was no callous disregard of constitutional rights because attorneys who have graduated from law school and passed the bar should be considered adequately trained to handle capital murder cases. *Id.* The district court dismissed the action for failure to state a claim upon which relief could be granted. On appeal, this court reversed and remanded, holding that the plaintiff stated a claim for municipal liability based on deliberate indifference to his constitutional rights because he alleged "not merely an isolated assignment of an inexperienced lawyer, but a deliberate pattern and policy of refusing to train lawyers for capital cases known to the county administrators to exert unusual demands on attorneys." *Id.*

In *Johnson v. Hawe*, 388 F.3d 676 (9th Cir. 2004), *cert. denied*, 125 S. Ct. 2294 (2005), this court rejected again the notion that a county can rely on the fact that its employees are trained professionals in order to avoid municipal liability. There, an arrestee filed suit under § 1983 alleging that he had been arrested, prosecuted and incarcerated in violation of the Fourth Amendment. In support of his claim of municipal liability he submitted the declaration of a law enforcement expert who opined that the police department's "self-training" program, which assigned responsibility to the individual officer for keeping abreast of recent court decisions involving law enforcement, amounted to a failure to train police officers about enforcement of the State statute under which the plaintiff had been arrested. *Id.* at 686. Without addressing the plaintiff's failure-to-train argument or the expert's supporting evidence, the district court rejected the municipal liability claim because the plaintiff had set forth no evidence to support the existence of a policy or custom which had been followed in his arrest. This court reversed and remanded. Finding that there were a number of cases which addressed enforcement of the State statute by public officials, the court held that the expert's declaration created "at least a genuine issue as to whether 'self-training' in this context amounted to deliberate indifference." *Id.*

**[7]** Thus, contrary to the district court's conclusion, the County's policy of hiring trained medical professionals does not insulate it from municipal liability as a matter of law.

### b. Adequacy of training

Appellant claims that the County failed adequately to train jail medical staff to document patients' conditions and to monitor and assess the need for patients to be transferred to a facility with a higher level of medical care. A county's failure adequately to train its employees to implement a facially valid policy can amount to deliberate indifference. *See Berry v. Baca*, 379 F.3d 764, 768 (9th Cir. 2004) (even where county's policy for releasing inmates was theoretically reasonable, as a matter of law the county could not be immune from allegations that, in practice, its implementation of the policy amounted to deliberate indifference); *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1088 (9th Cir. 2000) (policy of helping intoxicated individuals would not insulate county from liability for individual's death if plaintiff could show that the deprivation was caused by the police department's deliberate indifference in failing adequately to train officers).

**[8]** It is undisputed that the County knew of Mr. Idlet's medical condition and that the MSB unit was not equipped to care for acutely ill patients. Appellant argues that given the known limitations of the MSB unit it was obvious that MSB medical staff would need special training in order to care adequately for medically unstable patients and to assess whether such patients should be transferred to the hospital. Appellant has presented declarations of experts who, based on their review of Mr. Idlet's medical records for the eighteen days he was in the MSB and the depositions of MSB medical staff, opine that the MSB nurses had not been trained adequately in monitoring, documenting and assessing patients' acute medical conditions within the confines of a limited-care facility such as the MSB, and that this failure to train led to a fatal

delay in Mr. Idlet's care, resulting in his death. Appellant's experts further opine that, despite the County Jail's general policy requiring that medically unstable inmates be seen by a doctor and transferred to a hospital for acute care, the County had failed to train the MSB doctors adequately as to the urgency with which medically unstable patients must be seen and assessed in light of the MSB's limited medical facilities.

In rebuttal, the County provides testimony of its expert doctors and the MSB nurses, as well as relevant portions of the medical record, to show that Mr. Idlet was seen by nurses fifty times while he was in the MSB and that the staff cared for him diligently. The County asserts that the alleged instances of the MSB medical staff's neglect were isolated occurrences that do not reflect deliberate indifference and cannot be the basis for municipal liability.

**[9]** The evidence creates a triable issue of fact regarding whether the County's policy of relying on medical professionals without training them how to implement proper procedures for documenting, monitoring and assessing patients for medical instability within the confines of the MSB amounted to deliberate indifference.

### 2.　Failure to Implement Policies

In addition to a theory of municipal liability based on the County's failure adequately to train its medical staff, Appellant asserts that the County is liable for its failure to develop and implement necessary policies including a fall policy, a transfer policy, and a policy requiring prompt medical assessment in the event that an inmate refuses an essential medical treatment such as oxygen. The County argues that the policies it had in place were constitutionally sound. Below, the district court rejected Appellant's argument, holding that "Plaintiff's insistence that the County should have had specific guidelines on how an MSB doctor was to treat each of [Mr. Idlet's] symptoms, from crackles on bilateral lung fields to dark urine

to swelling to incontinence, would require the County to create a policy to address every medical exigency an MSB doctor might encounter." *Long v. County of Los Angeles*, No. 03-00531 DSF, Order Granting Defendant's Motion for Summary Judgment at 9 (Feb. 10, 2004). Appellant maintains that the district court's reasoning does not accurately address her argument, which is that the policy deficiency was not a failure to instruct on each specific medical symptom, but a failure to have adequate general policies.

**[10]** This court consistently has found that a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the county has other general policies in place. For example, in *Gibson*, a mentally ill detainee died while in the custody of the county jail. The decedent's wife sued the county, alleging that it had acted with deliberate indifference to her husband's mental illness. The district court granted summary judgment in favor of the county. On appeal, this court reversed and remanded, finding that the county's policy—which precluded a medical evaluation for an incoming detainee who was uncooperative, combative, or intoxicated—failed adequately to instruct the nurse on duty how to act upon medical information, including information from prescription medications, which she obtained from the detainee. The court held that a jury could find that the omission was sufficiently likely to result in the violation of the detainee's right to medical care that the county was deliberately indifferent to those needs. 290 F.3d at 1195. "When policymakers know that their medical staff members will encounter those with urgent mental health needs yet fail to provide for the identification of those needs, it is obvious that a constitutional violation could well result." *Id.* at 1196.

In *Fairley*, an arrestee who had been held in jail for twelve days as the result of a mistaken identification sued the City of Long Beach for the violation of his constitutional rights. At trial the jury found the city liable. On appeal this court

affirmed, finding that even though the city's policies and procedures had been complied with fully, the plaintiff had presented sufficient evidence to establish that the city's failure to instigate procedures to alleviate the problem of detaining individuals on the wrong warrant could constitute a policy of deliberate indifference. 281 F.3d at 918.

And in *Oviatt*, this court held that even though the county had a system for tracking arraignment dates for detainees, its lack of procedures to alleviate the problem of detecting missed arraignments—which resulted in the plaintiff's prolonged detention without an arraignment, a bail hearing, or a trial—was a policy of inaction that amounted to deliberate indifference to pretrial detainees' constitutional rights. 954 F.2d at 1478.

In the present case, Appellant's experts have opined that the County lacked adequate policies requiring MSB medical staff to transfer patients in the event of signs of medical instability, and to notify a physician promptly when an inmate falls, and when an inmate refuses essential medical treatment, such as when Mr. Idlet refused oxygen. The experts conclude that these inadequacies reflected deliberate indifference to Mr. Idlet's medical care and resulted in his death.

In rebuttal, the County provides testimony of its expert doctors and the MSB nurses, as well as relevant portions of the medical record, to show that Mr. Idlet was seen by nurses numerous times while he was in the MSB and that the staff afforded him proper care. The County asserts that the alleged instances of the MSB medical staff's neglect were isolated occurrences that do not reflect deliberate indifference and cannot be the basis for municipal liability.

[11] We conclude that Appellant has presented evidence that creates a triable issue regarding whether the County's failure to implement a policy for responding to the fall of a medically unstable patient, a policy providing for prompt medical assessment if an MSB patient refuses necessary treat-

ment, and a transfer policy, directing MSB staff immediately to transfer patients no longer medically stable, amounted to deliberate indifference to Mr. Idlet's constitutional rights.

## C. *Policy as the Moving Force Behind the Violation*

For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be "closely related to the ultimate injury." *Gibson*, 290 F.3d at 1196 (citation omitted). The plaintiff's burden is to establish " 'that the injury would have been avoided' " had proper policies been implemented. *Id.* (quoting *Oviatt*, 954 F.2d at 1478). Thus, in order to demonstrate that the County's policy deficiencies were the moving force behind the deprivation of Mr. Idlet's constitutional rights, Appellant must prove that the injury to Mr. Idlet would have been avoided had the County adequately trained MSB medical staff and/or instituted adequate general policies to guide the medical staff's exercise of its professionally-informed discretion. The evidence Appellant has presented creates a triable issue as to whether the County's policy deficiencies were the moving force behind Mr. Idlet's death.

## CONCLUSION

[12] In the context of *Monell* claims this court has emphasized, "Whether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question." *Gibson*, 290 F.3d at 1194-95 (citation omitted). Appellant has presented sufficient probative evidence to create a triable issue regarding whether the County's policy deficiencies constituted deliberate indifference to Mr. Idlet's constitutional rights and were the moving force behind his death. Accordingly, the district court's ruling granting the County's motion for summary judgment on the question of municipal liability is REVERSED and this case is REMANDED for further proceedings.

REVERSED AND REMANDED.