Johnnie PAXTON, et al.

v.

CITY OF MONTEBELLO.

Case No. CV 09–3691–RC.

United States District Court,
C.D. California.

March 18, 2010.

Carolina Veronica Diaz, for Plaintiff.

Kevin R. Dale, for Defendant.

**PROCEEDINGS: (1) ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; AND (2) ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT**

ROSALYN M. CHAPMAN, United States Magistrate Judge.

On February 17, 2010, plaintiffs filed a notice of motion and motion for summary judgment or, in the alternative, partial summary judgment, a supporting memorandum of points and authorities, a separate statement of uncontroverted facts, and several supporting declarations, and defendant City of Montebello ("City") filed a notice of motion and motion for summary judgment or, in the alternative, partial summary judgment, a supporting

memorandum of points and authorities, a separate statement of uncontroverted facts, and supporting declarations. On February 24, 2010, defendant City filed an opposition to plaintiffs' summary judgment motion and evidentiary objections to the declarations of plaintiffs and their counsel, and plaintiffs filed an opposition to defendant City's summary judgment motion and opposing declarations. On March 3, 2010, the parties filed their replies, both sides filed supplemental declarations, and defendant City filed additional evidentiary objections to plaintiffs' declarations.[1] Oral argument was held on March 17, 2010.

## BACKGROUND

### I

On May 28, 2009, plaintiffs Johnnie Paxton and Brandon Contreras filed a complaint against defendant City claiming violations of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 et seq., and seeking damages, interest, penalties, attorney's fees, costs, and other relief. On July 8, 2009, City answered the complaint and raised seven affirmative defenses.

### II

The parties' declarations establish the following uncontroverted facts: Plaintiffs Johnnie Paxton and Brandon Contreras are members of the California Army National Guard who enlisted in 1999 and are subject to being activated for military service. Declaration of Johnnie Paxton ("Paxton Decl.") ¶¶ 1–2; Declaration of Brandon Contreras ("Contreras Decl.") ¶¶ 1–2. On July 20, 2006, City hired plaintiffs as police trainees, and on August 25, 2006, plaintiffs became probationary police officers.[2] Paxton Decl. ¶¶ 3–4; Contreras Decl. ¶¶ 3–4; Mooshagian Decl. ¶¶ 3–4, Exhs. A–B; Declaration of Elizabeth Ortega ("Ortega Decl.") ¶ 4. On February 25, 2007, six months after being hired as probationary police officers, plaintiffs advanced to Step Two.[3] Paxton Decl. ¶ 5;

1. The Court, having reviewed defendant City's evidentiary objections, denies the objections to the declaration of Carolina Veronica Diaz; however, the Court finds some of defendant City's objections to the declarations of plaintiffs Johnnie Paxton and Brandon Contreras to have merit, and the Court has not considered the objected-to portions of those declarations in reaching its rulings.

2. City's police officers must serve a twelve-month probationary period, Declaration of Nicole Mooshagian ("Mooshagian Decl.") ¶ 5, Exh. C, which may be extended for another six months, as City routinely does for probationary police officers like plaintiffs hired directly from the police academy. Mooshagian Decl. ¶ 6, Exh. D; see also City of Montebello Municipal Code § 2.60.170.4 ("All initial appointments to public safety positions shall have a probationary period of twelve months; provided, however, that such probationary period may be extended for not more than a six-month period as determined by the appointing authority."). The probationary period is "part of the testing process" that allows City to observe "the employee's work, to secure effective adjustment of a new employee to his position" and "[t]o determine whether such probationary employee's performance meets the required standards." Mooshagian Decl. ¶ 5, Exh. C. On the average, City hires seven probationary police officers a year and three do not pass probation. Mooshagian Decl. ¶ 7; see also Supplemental Declaration of Brandon Contreras ¶ 1 (since 2006, approximately two police officers fail probation each year).

3. City's civil service rules establish the salary steps for City employees, which provide a salary increase of 5% at each step. Mooshagian Decl. ¶ 9, Exh. F. Generally, City employees must serve at least twelve months at Step Two and each subsequent step, and they advance to Step Two after completing six months of probation and are eligible for advancement to Step Three "at any time after [they have] proven [themselves] satisfactory in the second step for a period of at least twelve (12) months." Id. As a practical matter, this means probationary police officers hired directly from the police academy are not eligible for Step Three until they pass probation. Mooshagian Decl. ¶ 10.

Contreras Decl. ¶ 5; Mooshagian Decl. ¶ 8, Exh. E; Ortega Decl. ¶ 6.

On or about February 2007, plaintiffs learned they were being activated for military service, and they gave notice to City of their activation. Paxton Decl. ¶ 6; Contreras Decl. ¶ 6. On or about May 13, 2007, plaintiffs were deployed to Iraq for about one year, or until May 10, 2008. Paxton Decl. ¶ 12; Contreras Decl. ¶ 11. City awarded plaintiffs: paid military leave from May 13 to June 12, 2007, and from July 1 to July 30, 2007;[4] military leave without pay from June 13 to June 30, 2007, and from August 1, 2007, to January 23, 2008; and differential pay with military leave from January 23 to May 10, 2008.[5] Mooshagian Decl. ¶¶ 11–12, Exhs. G–H; Ortega Decl. ¶¶ 7, 9, 10–12, 16–20. City also awarded plaintiffs annual leave for their two months of paid military leave, but not for the remaining ten months of military leave. Ortega Decl. ¶¶ 7, 9, 12–13, 21.

When plaintiffs returned from military leave on May 11, 2008, City reinstated them to their probationary status and credited them with having completed eight months of probation, pursuant to Rule IX, Section 194, of City's civil service rules and regulations.[6] Mooshagian Decl. ¶¶ 5, 13, Exh. C. On January 25, 2009, plaintiff Pax-

---

**4.** The paid military leave was awarded under City's Military Leave Policy V–B–15, which provides:

> Any employee who is participating in annual military training under orders or ordered military duty[ ] shall receive his/her salary for the first 30 calendar days. Compensation for such purposes shall not exceed 30 accumulated calendar days in any one fiscal year.

Ortega Decl. ¶ 7, 10, Exh. L. City's fiscal year runs July 1st through June 30th. Deposition of Elizabeth Ortega at 16:10–17:5.

**5.** Differential pay is "the difference between the employee's current base monthly salary and the base military pay received by the employee." Ortega Decl. ¶ 14, Exh. M. The differential pay was awarded plaintiffs under Resolution 08–05, which the City Council of Montebello passed on January 23, 2008, for employees ordered to military service. *Id.*

**6.** Rule IX, Section 194, provides:

> [A]n employee on probationary status who enters active military service with the Armed Forces of the United States shall be entitled to all of the provisions of Section 395.3 of the Military and Veteran's [sic] Code of the State of California. **If such probationary employee has served one-half or more of his probationary period, he shall be credited with such time toward completion of his probationary period.** If such employee has served less than one-half of his probationary period, he shall serve the full probationary period beginning on the date of return to his position with the City.

Mooshagian Decl. ¶¶ 5, 13, Exh. C (emphasis added). Section 395.3 provides:

> In the event that any public officer or employee has resigned or resigns his or her office or employment to serve or to continue to serve in the Armed Forces of the United States or in the militia of this state, he or she shall have a right to return to and reenter the office or employment prior to the time at which his or her term of office or his or her employment would have ended if he or she had not resigned, on serving a written notice to that effect upon the authorized appointing power, or if there is no authorized appointing power, upon the officer or agency having power to fill a vacancy in the office or employment, within six months of the termination of his or her active service with the Armed Forces; provided, that the right to return and reenter upon the office or position shall not extend to or be granted to any public officer or employee, who shall fail to return to and reenter upon his or her office or position within 12 months after the first date upon which he or she could terminate or could cause to have terminated his or her active service with the Armed Forces of the United States or of the militia of this state.... The right of reentry into public office or employment provided for in this section shall include the right to be restored to the civil service status as the officer or employee would have if he or she had not so resigned; and no other person shall acquire civil service status in the same position so as to deprive the officer or employee of his or her right to restoration as provided for here-

ton successfully completed probation and was awarded Step Three pay, and on February 25, 2009, plaintiff Contreras successfully completed probation and was awarded Step Three pay. Mooshagian Decl. ¶ 15, Exhs. J; Ortega Decl. ¶¶ 23–24.

## DISCUSSION

### III

Federal Rule of Civil Procedure 56(c) provides for the granting of summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). Judgment must be entered "if . . . there can be but one reasonable conclusion as to the verdict . . . . [However, i]f reasonable minds could differ," judgment should not be entered in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence which the moving party "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 720 (9th Cir.2005). "Material facts are those which may affect the outcome of the case." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.

2006); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 907 (9th Cir.2001). "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Long*, 442 F.3d at 1185; *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir.2007). The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553; *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir.2005).

Finally, the parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 805–06, 119 S.Ct. 1597, 1603, 143 L.Ed.2d 966 (1999) (quoting *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552).

### IV

Congress enacted the Uniformed Services Employment and Reemployment Rights Act ("USERRA") in 1994 "to protect the employment and reemployment rights of veterans." [7] *Francis v. Booz,*

---

in. . . . This section does not apply to any public officer or employee to whom the right to reenter public office or employment after service in the Armed Forces has been granted by any other provision of law.

Cal. Mil. & Vet.Code § 395.3. "[P]ublic officers and employees" include "[a]ll officers and employees of any county, city and county,

city, township, district, political subdivision, authority, commission, board, or other public agency within [California]." *Id.*

7. The purposes of USERRA are:

(1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers

*Allen & Hamilton, Inc.*, 452 F.3d 299, 300 (4th Cir.2006). More specifically, USER-RA prohibits employers from discriminating against individuals based on their membership in the military. 38 U.S.C. § 4311; *see also Townsend v. Univ. of Alaska,* 543 F.3d 478, 482 (9th Cir.2008) (USERRA "forbids employment discrimination on the basis of membership in the armed forces."), *cert. denied,* —— U.S. ——, 129 S.Ct. 1907, 173 L.Ed.2d 1058 (2009); *Leisek v. Brightwood Corp.,* 278 F.3d 895, 898 (9th Cir.2002) (same). In certain circumstances, USERRA requires employers to reemploy service members upon their return from duty, 38 U.S.C. § 4312; *Wallace v. City of San Diego,* 479 F.3d 616, 625 (9th Cir.2007), and after reemployment has occurred, USERRA " 'prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services after they return from a deployment and are reemployed.' " *Clegg v. Ark. Dept. of Corr.,* 496

F.3d 922, 930 (8th Cir.2007) (citation omitted); *Petty v. Metro. Gov't of Nashville–Davidson County,* 538 F.3d 431, 440 (6th Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 1933, 173 L.Ed.2d 1057 (2009). "Because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries." *Francis,* 452 F.3d at 303; *Petty,* 538 F.3d at 439.

The plaintiffs claim City violated USER-RA regarding the terms of their reemployment, i.e., reinstatement, seniority, rate of pay (step) and annual leave, and by retaliating against them for taking military leave.[8] The plaintiffs are correct, as discussed below.

**A. Reinstatement, Seniority and Rate of Pay (Step):**

██ "Any person whose absence from a position of employment is necessitated by reason of service in the uniformed services is entitled to the reemployment rights and benefits of USERRA."[9] *Rogers v. City of*

---

and employment which can result from such service;

(2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and

(3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301(a).

8. In their opposition to City's summary judgment motion, and elsewhere, plaintiffs state "Defendant City would not allow Plaintiffs to come back to work 'immediately', as required under USERRA—but instead, made Plaintiffs wait two months before working again," Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment at 2:12–14; *see also id.* at 19:11–14; Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Memo.") at 18:8–17; Contreras Decl. ¶ 13; Paxton Decl. ¶ 13. However, to the extent

plaintiffs seek or contest summary judgment on the ground City did not promptly reemploy them in violation of USERRA, *see* 38 U.S.C. § 4313(a) (requiring prompt reemployment of returning veterans); 20 C.F.R. § 1002.181 (" 'Prompt reemployment' means as soon as practicable under the circumstances of each case. Absent unusual circumstances, reemployment must occur within two weeks of the employee's application for reemployment."), they cannot do so since they do not raise this issue in their complaint. *Pickern v. Pier 1 Imports (U.S.), Inc.,* 457 F.3d 963, 968–69 (9th Cir.2006); *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1292–93 (9th Cir.2000), *cert. denied,* 533 U.S. 950, 121 S.Ct. 2592, 150 L.Ed.2d 751 (2001); *see also Torres v. City of Madera,* 655 F.Supp.2d 1109, 1128 (E.D.Cal. 2009) ("If the complaint focuses on one theory of liability, the plaintiff cannot turn around and surprise the defendant at the summary judgment stage with a new theory of liability.").

9. "The USERRA construes the term 'reemployment' broadly to include persons technically on leave of absence who maintain some

*San Antonio,* 392 F.3d 758, 763 (5th Cir. 2004), *cert. denied,* 545 U.S. 1129, 125 S.Ct. 2945, 162 L.Ed.2d 868 (2005); 38 U.S.C. § 4312(a). Here, there is no dispute that plaintiffs are eligible services members within the meaning of USERRA. "Section 4312 of USERRA provides a right to reemployment for members of the armed services who (1) properly notify their employers of the need for a service-related absence, (2) take cumulative absence of no more than five years and (3) properly report to work or reapply for employment, depending upon the length of the absence." *Wallace,* 479 F.3d at 625; *see also Clegg,* 496 F.3d at 930 ("Section 4312 protects service members at the instant of seeking reemployment, entitling the service member to reemployment in either the position she would have been in had she not left for military service 'or a position of like seniority, status and pay, the duties of which the person is qualified to perform.'" (citation omitted)); *Petty,* 538 F.3d at 439–40 (same). More specifically, USERRA requires employers to "promptly reemploy[ ]" eligible service members who have been absent from work for more than ninety days due to military service in "the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform[.]" 38 U.S.C. § 4313(a)(2)(A). This obligation, known as the "escalator principle," is explained as follows:

> The principle behind the escalator position is that, if not for the period of uniformed service, the employee could have been promoted (or, alternatively, demoted, transferred, or laid off) due to

elements of the employee/employer relationship." *Jordan v. Air Prods. & Chem., Inc.,* 225

intervening events. The escalator principle requires that the employee be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service. Depending upon the specific circumstances, the employer may have the option, or be required, to reemploy the employee in a position other than the escalator position.

20 C.F.R. § 1002.191; *see also* 20 C.F.R. § 1002.192 ("In all cases, the starting point for determining the proper reemployment position is the escalator position, which is the job position that the employee would have attained if his or her continuous employment had not been interrupted due to uniformed service."). "[T]he escalator principle applies to the employment position, and rate of pay, as well as the seniority rights to which the returning service member is entitled." *Rogers,* 392 F.3d at 763; *see also* 20 C.F.R. § 1002.193(a) ("The reemployment position includes the seniority, status, and rate of pay that an employee would ordinarily have attained in that position given his or her job history, including prospects for future earnings and advancement. The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service."). Thus, "[a] person who is reemployed under USERRA is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the beginning of service **plus** the additional seniority and rights and benefits that he or she would have attained if the person had remained continuously employed." *Rogers,* 392 F.3d at

F.Supp.2d 1206, 1207 n. 1 (C.D.Cal.2002).

763 (emphasis added); 20 C.F.R. § 1002.193(a).

As an initial matter, the parties disagree about whether City violated USERRA when it reinstated plaintiffs as probationary police officers and placed them in Step Two. Plaintiffs' Memo. at 10:5–11:13. On the one hand, plaintiffs argue their probation should have ended while they were on military leave, and they rely on Rule IX, Section 194, of City's civil service rules to support their claim.[10] On the other hand, City contends it complied with USERRA when it reinstated plaintiffs as probationary police officers and placed them in Step Two, and then, after probation was completed, advanced plaintiffs to Step Three. Defendant City's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Defendant's Memo.") at 7:1–11:26. Neither side is totally correct.

■ As a general matter, a probationary employee can be required to complete his probationary period following his return from military leave. *Tilton v. Mo. Pac. R.R. Co.*, 376 U.S. 169, 180–81, 84 S.Ct. 595, 602, 11 L.Ed.2d 590 (1964).[11] Thus, "[a] returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period." *Id.*, 84 S.Ct. at 602; *see also* 70 Fed.Reg. 75246, 75272 (Dec. 19, 2005) (Department of Labor "has long held

that if a probationary period is a bona fide period of observation and evaluation, the returning service member must complete the remaining period of probation upon reemployment. Therefore, ... if an employee who left employment for military service was in the midst of a bona fide ... probationary period that required actual training and/or observation in the position[ ], ... the employee should be allowed to complete the ... probationary period following reemployment.")Thus, City properly reinstated plaintiffs as probationary employees, and properly required them to successfully complete probation, and plaintiffs' motion for summary judgment is denied to the extent they contend City wrongfully returned them to probationary status following their return from military leave and, conversely, City's cross-motion for summary judgment is granted on this claim.

This is not the end of the matter, however. Rather, "Congress intended a reemployed veteran who, upon returning from military service, satisfactorily completes his interrupted training, to enjoy the seniority status which he would have acquired by virtue of continued employment but for his absence in military service. This requirement is met if, as a matter of foresight, it was reasonably certain that advancement would have occurred, and **if, as a matter of hindsight, it did in fact**

---

**10.** *See* footnote 6 supra. The plaintiffs' reliance on the highlighted portion of Rule IX in arguing they should be awarded double credit for the probation period they completed before military service is mistaken. Here, plaintiffs received credit for the time they spent on probation **prior** to their military leave, and were only required to complete the portion of their probation they had not completed prior to military service. Mooshagian Decl. ¶ 13.

**11.** Although *Tilton* pre-dates the enactment of USERRA, it is clear that "[r]elevant pre-USERRA case law is properly considered as a

guide to interpreting USERRA." *Petty*, 538 F.3d at 439; *Francis*, 452 F.3d at 303; *see also* 20 C.F.R. § 1002.2 ("USERRA is the latest in a series of laws protecting veterans' employment and reemployment rights going back to the Selective Training and Service Act of 1940.... In enacting USERRA, ... Congress ... emphasized that Federal laws protecting veterans' employment and reemployment rights for the past fifty years had been successful and that the large body of case law that had developed under those statutes remained in full force and effect, to the extent it is consistent with USERRA.").

occur." [12] *Tilton,* 376 U.S. at 181, 84 S.Ct. at 602 (emphasis added). In other words, "upon satisfactorily completing that [probationary] period, ... [the employee] can insist upon a seniority date reflecting the delay caused by military service." *Tilton,* 376 U.S. at 181, 84 S.Ct. at 602; *see also* 70 Fed.Reg. at 75272 ("Once the employee completes the ... probationary period, the employee's pay and seniority should reflect both the pre- and post-service time in the ... probationary period, plus the time served in the military.").

Here, plaintiffs successfully completed their probation after reinstatement as probationary police officers, and upon such successful completion of probation, plaintiffs were entitled to have their seniority and pay changed to reflect their twelve months of military service. Although City's civil service policy generally requires an employee to serve at least twelve months at Step Two and each subsequent step, this policy cannot deny plaintiffs the benefits they are entitled to under USERRA. *See* 38 U.S.C. § 4302(b) ("This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establish-

---

**12.** City contends "it was not 'reasonably certain' that Plaintiffs would have passed probation but for their military service" because "the City retain[ed] the discretion as to whether a probationary police officer has performed successfully to advance beyond probationary status." Defendant's Memo. at 8:16–19. In making this argument, City relies, in large part, on *McKinney v. Mo.-Kan.-Tex.R.R. Co.,* 357 U.S. 265, 272, 78 S.Ct. 1222, 1227, 2 L.Ed.2d 1305 (1958). Such reliance is misplaced, however, since subsequent Supreme Court cases have limited *McKinney,* as the Seventh Circuit explained:

> Given ... subsequent [Supreme Court] decisions ..., it would appear that the "employer discretion" found critical in *McKinney* is the employer's discretionary choice to select some employees for advancement, promotion or transfer while passing over others.... However, where the discretion is of the type inherent in virtually every training program, the reemployed veteran is, upon qualification, entitled to claim the seniority status which he would have acquired, but for his military service, by the earlier completion of the training program. Such discretion would include, as a minimum, an employer's discretion to determine whether an individual employee is performing sufficiently well to warrant his advancement in the normal course to a position or status awarded to all those who continue their employment and successfully complete a probationary or training period.

*Pomrening v. United Air Lines, Inc.,* 448 F.2d 609, 613 (7th Cir.1971) (citation omitted); *see*

*also Montgomery v. S. Elec. Steel Co.,* 410 F.2d 611, 614–15 (5th Cir.1969) ("The unilateral right to discharge probationary employees, even though 'regularly' exercised ..., was never an affirmative discretionary factor in management's advancement selection criteria. *McKinney* is, therefore, inapposite."). Here, there is no serious dispute that plaintiffs, if they successfully completed probation—which they did—would have been retained as police officers, as they were. *See* Deposition of Nicole Mooshagian ("Mooshagian Depo.") at 69:18–71:6.

Moreover, if the Court were to adopt City's position, USERRA's protections would be rendered largely illusory, as the Supreme Court has noted:

> It would be virtually impossible for a veteran to show ... that it was absolutely certain, 'as a matter of foresight' when he entered military service, that all circumstances essential to obtaining an advancement in status would later occur. To exact such certainty as a condition for insuring a veteran's seniority rights would render those statutorily protected rights without real meaning.... In every veteran seniority case the possibility exists that ... the veteran would not have worked satisfactorily during the period of his absence.... In light of the purpose and history of this statute, however, we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights.

*Tilton,* 376 U.S. at 180–81, 84 S.Ct. at 602.

ment of additional prerequisites to the exercise of any such right or the receipt of any such benefit."). This means that, upon successfully completing probation. City should have awarded plaintiffs the seniority they would have had if they had not gone on military leave for twelve months and placed them in the Step Four pay category. Thus, plaintiffs' motion for summary judgment on their seniority and pay claims should be granted, and City's cross-motion for summary judgment on these claims must be denied.

## B. Annual Leave:

■ At the time plaintiffs were placed on military leave, they were accruing 9.23 prorated hours of annual leave for each two-week pay period or 240 hours (30 days) of annual leave yearly.[13] Ortega Decl. ¶ 8, Exh. K. For the two months plaintiffs were on paid military leave, City allowed them to accrue annual leave; however. City did not allow plaintiffs to accrue annual leave for the remaining ten months of military leave. Ortega Decl. ¶¶ 12–13. Plaintiffs contend City's refusal to allow them to accrue annual leave for

their whole twelve months of military leave violated their rights under USERRA. On the other hand, City claims USERRA was not violated because City "does not provide Annual Leave accruals to other similarly situated employees on furlough or leave of absence."[14] Defendant's Memo. at 12:13–15; see also Ortega Decl. ¶ 13, Exh. K, Rule 227 ("Absence without pay shall cause ... accrual of [annual] leave to be reduced on a prorated bases."). The plaintiffs are correct.

USERRA provides that an employee who is absent from work to perform military service is generally "deemed to be on furlough or leave of absence while performing such service[,]" 38 U.S.C. § 4316(b)(1)(A); 20 C.F.R. § 1002.149, and is "entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service." 38 U.S.C. § 4316(b)(1)(B);[15] 20

13. Annual leave includes holidays, vacations, illness, injury and disability. Ortega Decl. ¶ 8, Exh. K.

14. At oral argument, City also cited California Labor Code § 227.3 (requiring payment of vested vacation wages upon termination) and California Military & Veterans Code § 395.03 to support this argument. However, Section 395.03 provides:

> No more than the pay for a period of 30 calendar days shall be allowed under the provisions of Section 395.01 or 395.02 for any one military leave of absence or during any one fiscal year, **except as otherwise authorized by resolution of the legislative body of a public agency** or as provided in a memorandum of understanding reached with an employee organization pursuant to Chapter 10 (commencing with Section 3500) of Division 4 of Title 1 of the Government Code.

Cal. Mil. & Vet.Code § 395.03 (emphasis added). Here, City has "otherwise authorized" in Military Leave Policy V–B–15, as discussed below; thus, the statutory provisions cited by City do not support its position.

15. "Rights and benefits" under USERRA means:

> any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).

C.F.R. § 1002.149. "As a general matter, [however,] accrual of vacation leave is considered to be a non-seniority benefit that must be provided by an employer to an employee on a military leave of absence only if the employer provides that benefit to similarly situated employees on comparable leaves of absence." 20 C.F.R. § 1002.150(c).

Initially, the Court is at a loss to understand City's application of Rule 227 to the period of military leave during which plaintiffs received differential pay under Resolution 08–05. Clearly, plaintiffs were being paid by City during this four-month period. Thus, for the four months plaintiffs were on military leave with differential pay, their situation was just like being on paid leave—not unpaid leave. Yet, City argues they were on unpaid leave during this time and, thus, could not accrue annual leave. This is clearly wrong, and under Section 1002.150(c), plaintiffs were entitled to accrue annual leave while receiving differential pay since other individuals on paid leave accrue annual leave. *See* Ortega Depo. at 31:5–13.

More importantly, however, City has a written policy specifically affording rights and benefits to employees on military leave, and that policy, Military Leave Policy V–B–15,[16] provides that employees who are reinstated following "ordered military leave," such as plaintiffs, are entitled to "receive the same vacation, sick leave and holiday or annual leave privileges **as [they] would have enjoyed had [they] not been absent.**" Ortega Decl. ¶ 10, Exh. L (emphasis added); *see also* Ortega Depo. at 30:21–24 (Plaintiffs' annual leave

would have accrued as normal had plaintiffs not taken military leave). Yet, despite this policy, City claims Rule 227 of its general civil service rules precludes plaintiffs from accruing annual leave while on "unpaid" military leave. City is in error in treating the six months plaintiffs were on military leave without pay like being absent without pay for the purpose of accruing annual leave. "[T]he fundamental rules of statutory construction apply in interpreting municipal enactments." *McGraw v. City of Huntington Beach,* 882 F.2d 384, 388 (9th Cir.1989). Under fundamental statutory construction rules, "[a] specific provision controls over one of more general application." *Gozlon–Peretz v. United States,* 498 U.S. 395, 407, 111 S.Ct. 840, 848, 112 L.Ed.2d 919 (1991). This means that, here, Military Leave Policy V–B–15 controls over Rule 227 of the civil service rules. Since it is undisputed that plaintiffs would have accrued annual leave if they had not been on military leave, Mooshagian Depo. at 71:7–24, plaintiffs are entitled under USERRA to accrue annual leave while on military leave—even unpaid military leave.[17] Thus, plaintiffs' motion for summary judgment on their annual leave claim should be granted, and City's cross-motion for summary judgment on this claim must be denied.

### ORDER

Plaintiffs' motion for summary judgment **IS GRANTED,** in part, and **DENIED,** in part, and defendant City's cross-motion for summary judgment **IS GRANTED,** in part, and **DENIED,** in part, as set forth

---

**16.** This Court, thus, is not faced with the situation under Section 1002.150(c), wherein the non-seniority rights provided to employees on military leave must be compared with the non-seniority rights provided to employees on comparable leave of absence. *See Tully v. Dep't of Justice,* 481 F.3d 1367, 1369–70 (Fed.Cir.2007).

**17.** Having found plaintiffs are entitled to summary judgment on their seniority, pay and annual leave claims, the Court need not address plaintiffs' alternate theory of retaliation, 38 U.S.C. § 4311(b), as plaintiffs would obtain no further benefit from this Court addressing those claims. *Petty,* 538 F.3d at 445–46.

herein. Judgment shall be entered in favor of plaintiffs, and such Judgment shall reflect the amount of damages, annual leave, accrued interest (if any), liquidated damages or penalties (if any), attorney's fees (if any) and costs to which plaintiffs are entitled, as determined by this Court at a later date.

1. For purposes of the Judgment, plaintiffs shall, no later than 30 days from the date of this Order, after complying with Local Rule 7–3, file either a stipulation setting forth the amount of damages, annual leave, accrued interest (if any), and liquidated damages or penalties (if any) to be awarded plaintiffs or, in the alternative, a motion for the award to plaintiffs of damages, annual leave, accrued interest (if any), and liquidated damages or penalties (if any), with supporting evidence, and setting a hearing on that motion.

2. For purposes of the Judgment, plaintiffs shall, no later than 30 days from the date of this Order, after complying with Local Rule 7–3, file either a stipulation setting forth the amount of attorney's fees and costs to be awarded plaintiffs or, in the alternative, a motion for the award of attorney's fees and costs, with supporting evidence, and setting a hearing on that motion.