Filed 1/25/24  Riaz v. County of Tulare CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SAMREEN RIAZ, | F085100 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. VCU289294) |
| COUNTY OF TULARE et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Samreen Riaz, in pro. per., for Plaintiff and Appellant.

Jennifer M. Flores, County Counsel, Kathleen A. Taylor and Stephanie R. Smittle, Deputy County Counsel, for Defendant and Respondent County of Tulare.

-ooOoo-

Samreen Riaz (plaintiff) appeals from a judgment entered after a demurrer was sustained without leave to amend.  The ruling was largely based on plaintiff's failure to meet the prelitigation requirements of the Government Claims Act (Gov. Code, § 810 et seq.).  In addition, plaintiff's allegations were held insufficient to support her purported causes of action.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is self-represented and a nonnative English speaker. She describes herself as a Pakistani-born Asian American and "religious Muslim minority." Her written submissions are difficult to follow and at times unintelligible. In the interest of providing a contextual background, we take judicial notice (on our own motion) of the records in two of plaintiff's numerous pending appeals: *Riaz v. Family Health Care Network*, F085829, and *Riaz v. Altura Centers for Health*, F085852. Based on a careful examination of the pleadings, including the exhibits, we understand the general background and plaintiff's factual allegations to be as follows.

### Background

Plaintiff practiced dentistry in the Central Valley. In 2018, she was terminated from a position of employment with Altura Centers for Health (Altura). Plaintiff alleges she was fired in retaliation for her complaints of "harassment" and "privacy breach" at work. Soon afterward, during the latter half of 2018, plaintiff was allegedly "trolled," "harassed," and "stalked" on the Internet by an unknown person or persons.

In late 2018, plaintiff was employed by Western Dental in Hanford. However, she allegedly "started getting stalked/harassed" again, and "privacy breach issues continue[d] at [her] new job." She eventually quit "[d]ue to harassment" and her employer "insisting [she] move to Porterville."

In January 2019, plaintiff sued her former employer, Altura, for wrongful and retaliatory discharge. During the same general time period, plaintiff obtained new employment with Family HealthCare Network in Visalia. Family HealthCare Network is reportedly classified as a "federally qualified health center," and plaintiff refers to this employer by the acronym FQHC. Her use of the acronym is often confusing, however, because Altura is also a federally qualified health center. Plaintiff sometimes refers to Altura as "FQHC Tulare" or simply "FQHC," thus making it difficult to know whether she is referencing Altura or Family HealthCare Network.

2.

Plaintiff was allegedly harassed, discriminated against, and "stalked" while employed at Family HealthCare Network. By June 2019, the "[h]arassment at FQHC was [so] severe" that she began seeing a psychiatrist. The alleged "harassment" was not confined to the workplace. Plaintiff has given examples of being stopped by the California Highway Patrol (CHP) and receiving speeding tickets. She has alleged the CHP became involved in a large-scale conspiracy against her "due to [her] complaint to FQHC."

In June 2019, plaintiff's "hair turned green" during or after a visit to a salon. Plaintiff alleges the person(s) responsible did it "because of [her] religion, country of birth, … and not stopping to bring harassment and stalking complaint forward." (*Sic*.) Plaintiff has purported to believe the people at the salon were conspiratorial agents acting in retaliation for her "filing [a] court case or complaint against FQHC." Plaintiff has further alleged that later in 2019, at another salon, someone "added a red tint to [her] hair." She characterizes both incidents as "hate crime[s] related to [s]talking, [h]arassment, [and] civil right violation."

In October 2019, plaintiff's employment with Family HealthCare Network was terminated. She claims to have been fired for refusing to tolerate "harassment" and for "[c]omplaining in writing to FQHC." Plaintiff subsequently had difficulty finding employment and experienced various forms of alleged "harassing and stalking" in her daily life. An example of such harassment was people mispronouncing her name. Plaintiff has professed to believe that unknown/unnamed conspirators who made her "a target of harassment, stalking, vandalization, [and] civil right[s] violation[s]" are responsible for "destroying [her] career."

In February 2020, plaintiff filed a small claims action against one of the above-mentioned salons. By this point, plaintiff had begun to experience "'coincidences'" that she perceived as further "harassment" and "stalking" orchestrated by the

unknown/unnamed conspirators. The following example is excerpted verbatim from her own narrative in an exhibit to her pleadings:

> "I went to the court library to make extra set of copies and approached a man who was at kiosk. He was a white man wearing Brown leather jacket very similar to mine and has long horizontal frown line on his forehead. I brought similar jacket that day to the Court. In the past I do get stalk by a white girl with similar jacket twice near famous foot wear. I was also harassed and stalked by woman with forehead lines.

> "Before I filed the case woman outside the counter sitting with grey and black hair. She is specifically placed there with 'grey hair' as woman or man who bring complaint forward go thru violence where one of the topic is 'grey hair'. I either get followed by grey cars, random stalker at store with grey hair go out of the way talk to me, electronic harassment on internet with grey hair topic which I posted ob IC3 yelp review." (*Sic*.)

***The Present Case***

On July 15, 2020, plaintiff went to the courthouse in Visalia to attend legal proceedings. (Two motions were scheduled to be heard that day in her lawsuit against Altura.) After entering the building, she encountered a sheriff's deputy (Deputy Rockholt) at the security checkpoint. Deputy Rockholt instructed plaintiff to remove her shoes and allegedly said, "We want to see your toes."

Plaintiff found Deputy Rockholt's conduct offensive and reported the incident to a "security supervisor" named Sergeant Bonilla. Sergeant Bonilla allegedly spoke in defense of Deputy Rockholt and was reluctant to give plaintiff a "Tulare County Sheriff's Department Personnel Complaint Form." But he did provide the form, which plaintiff filled out by hand. The record contains copies of the completed form, but they are of poor quality and only partially legible. The readable portion shows plaintiff accused Deputy Rockholt of discrimination, making "sexual comments," and being "involved in harassment, stalking, and retaliation."

Captain Mark Gist of the administrative services division of the Tulare County Sheriff's Office allegedly contacted plaintiff by phone in response to her complaint and

apologized for Deputy Rockholt's behavior. Plaintiff alleges Captain Gist also "confirmed it is not [a departmental] policy to ask any one to show any body part while reaching court to attend hearing[s]." Plaintiff subsequently received a letter from Captain Gist dated July 20, 2020. It stated, in pertinent part:

> "Dear Ms. Raiz [*sic*],
>
> "This letter is in response to your complaint regarding the way a Security Officer conducted themselves and spoke to you on July 15.
>
> "A thorough investigation has been conducted into this matter and appropriate action has been taken. Thank you for bringing this matter to our attention."

On July 24, 2020, plaintiff returned to the courthouse and had another encounter with Deputy Rockholt. This time he allegedly pointed at her, doing so while looking in the direction of a colleague. Plaintiff's description of the incident suggests Deputy Rockholt was making the other staff member aware of plaintiff's presence when she entered the building. Plaintiff alleges he "pointed out his finger toward [her] face in close proximity." Plaintiff filled out another complaint form, alleging Deputy Rockholt's nonverbal conduct was an attempt to discourage her from attending court proceedings.

Subsequent to the July 24 incident, strangers allegedly began pointing at plaintiff in public places. In her words, she became a "regular victim of pointing finger at her face by random stalker[s] on street," and even during job interviews. The pleadings allege plaintiff "also observed many people/stalker[s] with defect in eyes after [Deputy Rockholt's] gesture of pointing finger close to [her] face." In essence, Deputy Rockholt is alleged to have orchestrated a campaign of finger-pointing "harassment" carried out by unknown conspirators.

Between July 30 and August 5, 2020, plaintiff sent e-mails to the Clerk of the Tulare County Board of Supervisors, the Tulare County Grand Jury, and the United States Department of Homeland Security. These communications contained allegations

of stalking and harassment dating back to 2018. Much of the above background information is drawn from the contents of these e-mails. We discuss the e-mails elsewhere in the opinion in relation to the requirements of the Government Claims Act.

On August 12, 2020, plaintiff was placed under a mental health evaluation hold pursuant to Welfare and Institutions Code section 5150. Visalia police officers detained plaintiff at her home before transporting her to a hospital. According to police reports, the detaining officers suspected she was "delusional" and "paranoi[d]," and had become "gravely disabled." Plaintiff discusses this incident in her pleadings in relation to the requirements of the Government Claims Act. Plaintiff also acknowledges there is a separately pending lawsuit in federal court based on this incident: *Riaz v. Henry et al.* (E.D.Cal., No. 1:21-cv-00911).

Approximately six months later, in February 2021, plaintiff developed an eye problem. She alleges Deputy Rockholt and/or other unknown/unnamed conspirators somehow caused the injury, and that it was somehow related to the July 2020 finger-pointing incident. However, plaintiff does not allege Deputy Rockholt ever made physical contact with her eye. The pleadings vaguely contend she "suffered from permanent bodily injury with the potential use of a lethal military-grade precision weapon." Plaintiff alleges her condition was variously diagnosed as "esophoria," "exophoria," and/or "strabismus."

In April 2021, plaintiff sought medical treatment for the eye problem. Multiple doctors either declined to accept her as a patient or, after initially seeing her, declined to provide further care. Plaintiff's exhibits indicate at least one such rejection was due to her own behavior. A physician's letter dated April 6, 2021, states a reason for not accepting her as a patient was because her "demeanor with our office was unacceptable." However, the pleadings allege plaintiff was denied medical treatment "[a]s a result of [Deputy Rockholt] and organized covert stalking unjustified, excessive, illegal, use of influence." (*Sic.*)

6.

Between April 27 and September 27, 2021, plaintiff sent e-mails to the California Department of Justice, the Public Information Officer for the Tulare County Sheriff's Office, the Tulare County Counsel's Office, and the Clerk of the Tulare County Board of Supervisors. The e-mails included complaints about Deputy Rockholt, but none asserted a claim or demand for money or damages. An e-mail to the sheriff's public information officer did warn, "I may pursue eye damage claim and related event thru judicial branch." The e-mail to the board of supervisors on September 27, 2021, read as follows:

> "Good morning Tulare County board members.
>
> "Tulare Sheriff Rock Holt is involved in my organized stalking and harassment especially when I entered court for my hearing. I was harassed by Officer rock halt. Now after his threat my eye got damage and Tulare eye Drs due to probably influence from Law enforcement denying care to me. It seems like Tulare sheriffs has links to similar gang activities as la county sheriffs and using violence against minorities, whistleblower. Tull lookers sheriff brutality damage my eye permanently. Please look into matter.
> "Thanks
> "Dr Samreen Riaz" (*Sic*.)

### *Procedural History*

On November 1, 2021, plaintiff filed a civil complaint against the County of Tulare, the Tulare County Sheriff's Office, Deputy Rockholt in his individual and official capacities, and Victor Bonilla in his individual and official capacities (collectively defendants). The pleading was inexplicably labeled as an amended complaint. The caption read as follows:

> "Plaintiff's First Amended Complaint for: Conspiracy to Interfere With Civil Rights under 42 U.S.C. § 1985; Deprivation of Civil Rights Under 42 U.S.C. § 1983[;] Deprivation of Civil Rights Under State Code §§ 51 (Unruh Act) and 52.1 [¶] 2. Taxpayer Suit To Prevent The Illegal Expenditure of Funds (Cal. Code Civ. Proc. 526A). [¶] 3. Failure To Take All Reasonable Steps To Prevent Discrimination [¶] 4. Harassment and Hostile Environment [¶] 5. Retaliation [¶] 6. Unlawful Retaliation: Labor Code § 1102.5 (Whistleblower Law); [¶] 7. Battery; [¶] 8. Assault; [¶] 9. Negligence; and Intentional Infliction of Emotional Distress [¶] 10. Racial

7.

Discrimination [¶] 11. Injunctive and declaratory relief and receivership (42 U.S.C. §§ 1983, 1985." (Boldface and some capitalization omitted.)

On April 5, 2022, defendants filed a demurrer to the complaint.

On or about April 25, 2022, while the demurrer was pending, plaintiff filed a claim with the Tulare County Board of Supervisors using a preprinted "Liability Claim Report" form. In a box designated for describing the basis for liability, plaintiff wrote, "Tulare Sheriff Dept, DA Tulare Office is 'not investigating' Tulare Sheriff Rockholt, Victor Bonilla involvement in eye damage, violent organized stalking, harassment, discrimination, retaliation and impediment of court participant." (*Sic*.) In a box designated for a description of personal injuries suffered, plaintiff wrote, "Racial discrimination, emotional infliction of distress, harassment, [illegible] discrimination violation of civil rights under 42 USC 1983, illegal expindeture of funds, battery, assault not charged or investigated[,] Prevent Samreen Riaz [illegible] brought incident to authorities." (*Sic*.) Plaintiff stated the amount of her claim was $1 million.

On or about May 3, 2022, plaintiff was notified in writing that her claim was untimely under Government Code sections 901 and 911.2. She was advised that her only recourse was to apply for leave to present a late claim pursuant to "Sections 911.4 to 912.2, inclusive." The written advisement also cited to Government Code section 946.6.

On May 17, 2022, the trial court sustained the demurrer with leave to amend. The ruling noted that plaintiff's purported causes of action were not "expressly delineated" in the complaint. Regarding the taxpayer action under Code of Civil Procedure section 526a, the demurrer was sustained for failure to plead "specific, detailed facts" in support of the claim. As to all other state law claims, the demurrer was sustained for failure to plead compliance with the Government Claims Act. The ruling did not explain why the demurrer was sustained as to the federal claims.

On May 19, 2022, plaintiff submitted an application for leave to file a late claim to the Tulare County Board of Supervisors.

8.

On May 25, 2022, plaintiff filed a first amended complaint. Defendants responded by filing another demurrer.

On May 26, 2022, plaintiff was notified that her application for leave to present a late claim had been denied as untimely pursuant to Government Code section 911.4.

In July 2022, defendants' second demurrer was sustained with leave to amend. In a six-page ruling, the trial court again determined plaintiff had failed to adequately plead compliance with the Government Claims Act or sufficient allegations to support a taxpayer action under Code of Civil Procedure section 526a. Plaintiff was found to have "abandoned" her previously asserted claim under title 42 United States Code section 1983, and to have asserted a "new" cause of action labeled as "First Amendment Retaliation under Section 1983." Plaintiff was also found to have added claims labeled as "Harassment (Unruh Act)," "Fraud," and "Negligent Infliction of Emotional Distress." As to the "new" causes of action, the demurrer was sustained without leave to amend because plaintiff neither sought nor received permission to add any new claims.

Plaintiff subsequently filed (1) a second amended complaint; (2) a petition under Government Code section 946.6 for relief from the prelitigation claim requirement; and (3) a motion to amend her pleadings to assert the "new" causes of action (plaintiff disputed the characterization of those claims as new). Defendants filed a demurrer to the second amended complaint and opposed the petition for relief and motion to amend.

On September 27, 2022, the trial court issued a 12-page ruling. Defendants' third demurrer was sustained without leave to amend, and plaintiff's requests for relief were denied. Regarding all causes of action subject to the Government Claims Act, plaintiff's claims and requests for relief were found untimely based upon the six-month and one-year deadlines established by Government Code sections 911.2, 911.4, and 946.6. Regarding the purported taxpayer action, plaintiff was again found to have pled "only allegations, innuendo and legal conclusions without specific, actual facts supporting the allegations." Plaintiff's generalized conspiracy theories, including allegations of sheriff's

9.

deputies being "'possible members of gangs'" and the existence of "'a well organized covert harassment system in place to discourage residents to reach the court,'" were held insufficient.

A judgment of dismissal was entered on October 6, 2022. Plaintiff's notice of appeal was filed on October 10, 2022.

## DISCUSSION

### I. Standard of Review

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) The complaint is liberally construed, with "'all material facts properly pleaded'" accepted as true, but no weight is given to "'contentions, deductions or conclusions of fact or law'" therein. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "If the allegations in the complaint conflict with the exhibits, we rely on and accept as true the contents of the exhibits." (*SC Manufactured Homes*, *Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83.)

"Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment. The plaintiff bears the burden of proving an amendment could cure the defect." (*T.H. v. Novartis Pharmaceuticals Corp.*, *supra*, 4 Cal.5th at p. 162.)

### II. Untimely State Law Claims

#### A. Overview

"As a general rule, no suit for money or damages may be brought against a public entity [or its employees] until a written claim, known as a government [tort] claim, is presented to and rejected by that entity." (*Hernandez v. City of Stockton* (2023) 90 Cal.App.5th 1222, 1230; see Gov. Code, § 950.2.) As set forth in Government Code section 910, the claim must provide the following information:

10.

"(a) The name and post office address of the claimant.

"(b) The post office address to which the person presenting the claim desires notices to be sent.

"(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

"(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.

"(e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.

"(f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case."

A government tort claim "shall be presented … not later than six months after the accrual of the cause of action." (Gov. Code, § 911.2, subd. (a).) An application to present a late claim may be submitted to the public entity "within a reasonable time not to exceed one year after the accrual of the cause of action." (*Id*., § 911.4, subd. (b).) Failure to present a timely claim or obtain permission to submit a late claim ordinarily precludes the claimant from pursuing the alleged cause of action in court. (*Id*., §§ 945.4, 946.6, 950.2.)

If an application to present a late claim is denied by the public entity, the claimant may petition for a court order excusing him or her from the claim presentation requirement. (Gov. Code, § 946.6, subd. (a).) "The petition for relief must state that an application under Government Code section 911.4 was made to the public entity and was denied or deemed denied, state the reason for failure to timely present the claim as required by Government Code section 911.2, and state the information required by

11.

Government Code section 910." (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 63, citing Gov. Code, § 946.6, subd. (b).) However, courts have no jurisdiction to grant relief from noncompliance unless the plaintiff submitted the application to present a late claim within the one-year deadline. (*J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1221; *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1779; see Gov. Code, § 946.6, subd. (c).)

"'Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants. (Gov. Code, § 901.)'" (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 906.) "A cause of action ordinarily accrues when the wrongful act occurs, the liability arises, and the plaintiff is entitled to prosecute an action." (*Ovando v. County of Los Angeles*, *supra*, 159 Cal.App.4th at p. 66.) "'A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." [Citations.]'" (*Ibid.*) Put differently, the accrual point is "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, [i.e.,] that someone has done something wrong to her." (*Jolly v. Eli Lilly & Co*. (1988) 44 Cal.3d 1103, 1110.)

The claim presentation requirement is an essential element of a cause of action against a public entity. (*State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1244.) "[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, [the] complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action." (*Id*. at p. 1243; accord, *Rubenstein v. Doe No. 1*, *supra*, 3 Cal.5th at p. 906.)

**B.  Applicability of Claim Presentation Requirement**

The claim presentation requirement applies to all claims for money or damages, including claims asserted pursuant to the Unruh Civil Rights Act (Civ. Code, § 51 et seq.)

12.

and the Tom Bane Civil Rights Act (*id*., § 52.1). (*Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1167; *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 763–764.) Conversely, "the general rule [is] that the claims statutes do not impose any requirements for nonpecuniary actions, such as those seeking injunctive, specific or declaratory relief." (*Loehr v. Ventura County Community College Dist*. (1983) 147 Cal.App.3d 1071, 1081.) The exemption for nonpecuniary claims does not apply unless the cause of action seeks no money/damages or, according to some authorities, if only "'incidental money damages are sought.'" (*Gatto*, at p. 762.) Other cases hold "the government claim requirement applies to any monetary claim even if it is merely incidental to other relief sought." (*Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497, citing *TrafficSchoolOnline, Inc. v. Clarke* (2003) 112 Cal.App.4th 736, 742.)

In her reply brief, plaintiff contends the "[p]rimary purpose" of her lawsuit "was to press charges against the Sheriff's employee involved in harassment, threat, assault, organized crime, and intimidation of court witnesses to obstruct court proceedings and requested investigate press charges and bring oversight to the sheriff's department." (*Sic*.) She thus contends the damages sought are "incidental to the injunction" and, therefore, presentation of a government tort claim was unnecessary. We are not persuaded.

Under the authorities recognizing a possible exemption for actions seeking both monetary and injunctive relief, the claim presentation requirement "remains applicable [where] money damages are not incidental or ancillary to any specific relief that is also sought, but the primary purpose of the action." (*Gatto v. County of Sonoma*, *supra*, 98 Cal.App.4th at p. 762; accord, *Lozada v. City and County of San Francisco*, *supra*, 145 Cal.App.4th at p. 1168.) Here, as the trial court observed, plaintiff's lawsuit "seeks money damages, punitive damages, equitable relief, prejudgment interest, costs, attorneys' fees and civil penalties." In both her government tort claim of April 2022 and

13.

subsequent application for leave to file a late claim, plaintiff sought $1 million.  Of that sum, $500,000 was attributed to personal injury and none to property damage, thus implying a demand of $500,000 for punitive or other noneconomic damages and/or penalties.  The pursuit of monetary recovery is more than "incidental" to plaintiff's request for injunctive relief.  (See, e.g., *Loehr v. Ventura County Community College Dist.*, *supra*, 147 Cal.App.3d at pp. 1081–1082.)

## III. Plaintiff Failed to Meet the Statutory Requirements

### A. Claims Based on Events of July 2020

All causes of action arising from the incidents involving Deputy Rockholt on July 15 and 24, 2020, accrued that same month.  This is evident from two e-mails sent by plaintiff to the Clerk of the Tulare County Board of Supervisors on July 30, 2020.  The first message read as follows:

> "Hi,
> "I would like yo bring Tulare Sheriff department involvement in organized stalking, harassment, civil rights violation.  Some of the incidents happens inside the court with Tulare Sheriff department.  Tulare Sheriff Dept has not taken report seriously due to which I am having a difficult time to go court with feeling harassed.
> "Thanks
> "Samreen Riaz"  (*Sic.*)

The second message read, in pertinent part:

> "July 15 20 I went to Tulare Superior Court on Mooney Avenue, Visalia California and employee Rick Holt of Tulare Sheriff at security stated 'we want to see your toes' he let everyone else with close shoe passed by without showing desire to see anyone else 'Toes'.  I am reporting it to internal investigation.  My suggestion to Rock Holt is who ever are 'we' you can show 'your mother toe' to them.  officer Nash witnessed discrimination/ harassment incident and stated let supervisor know.  Sergeant Bonilla tried me to not report the incident but upon my insisting gave me document to complaint.  Employee Rock Holt not only disrespecting minority women but Court also.  Discouraging tactics so victim cannot seek justice is unacceptable.  This kind of disgusting harasser should not be in law enforcement anyways[.]"  (*Sic.*)

14.

Plaintiff's statements reflect her belief defendants were responsible for misconduct that included harassment and discrimination.  Any causes of action arising from the incidents involving Deputy Rockholt accrued no later than July 30, 2020, and the six-month deadline to file a government tort claim expired in January 2021.  (Gov. Code, § 911.2, subd. (a).)  The one-year deadline for applying to present a late claim expired in July 2021.  (*Id*., § 911.4, subd. (b).)  Plaintiff's application for relief under Government Code section 911.4 was not submitted until May 2022.  Because the application was not filed within the one-year deadline, the trial court had no ability to grant plaintiff's petition for relief under Government Code section 946.6 (which she filed in July 2022), and the petition was appropriately denied.  (See *id*., § 946.6, subd. (c); *J.J. v. County of San Diego*, *supra*, 223 Cal.App.4th at p. 1221.)

 In her briefing, plaintiff alleges substantial compliance with the requirements of Government Code sections 910 and 911.2 based on the above-quoted e-mails and an additional e-mail to the Tulare County Grand Jury on August 5, 2020.  The argument fails for multiple reasons.

First, "[t]he claimant bears the burden of ensuring that the claim is presented to the appropriate public entity."  (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 991.)  "If an appropriate public employee or board never receives the claim, an undelivered or misdirected claim fails to comply with the statute."  (*Id*. at p. 992.)  Government Code section 915 requires a government tort claim to be hand delivered or mailed to, or actually received by, the "clerk, secretary, auditor, or board of the local public entity."  (*Id*., subds. (a), (e).)  Plaintiff's e-mail to the Tulare County Grand Jury was insufficient.  (See, e.g., *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 714 [in a lawsuit against county office of education, plaintiff's late-claim application to the county board of supervisors did not constitute substantial compliance].)

15.

Second, there is a two-part test for determining substantial compliance: "Is there *some* compliance with *all* of the statutory requirements; and, if so, is this compliance sufficient to constitute *substantial* compliance?" (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 456–457.) Plaintiff's e-mails to the board of supervisors and the grand jury both fail under the threshold inquiry because neither included a request for damages or monetary compensation, nor any indication whether a related lawsuit would be filed as a limited or unlimited civil action as required by Government Code section 910, subdivisions (d) and (f). (See, e.g., *Loehr v. Ventura County Community College Dist.*, *supra*, 147 Cal.App.3d at p. 1083 [rejecting plaintiff's substantial compliance argument: "Nowhere in the letter is there a claim for money damages, nor, for that matter is there even an estimate of the amount of any prospective injury, damage or loss"].)

"'The doctrine of substantial compliance cannot cure the total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute.' [Citations.] Thus, a failure to even estimate the amount of damages on the claim document cannot be remedied by application of the doctrine." (*A.S. v. Palmdale School Dist.* (2023) 94 Cal.App.5th 1091, 1097.)

## B.      Claims Based on Events Between February and April 2021

Assuming plaintiff could otherwise state cognizable claims based on her eye problem and the events of February 2021 through April 2021, such claims accrued no later than April 27, 2021. The accrual date is established by an e-mail she sent to the California Department of Justice. It read as follows:

> "Hi,
> "Please consider this official incident report related to likely involvement of Mr. Rock Holt in hate crime, eye damage/violence and harassment related to violence toward me. My eye got damage after threat on internet and physically by a stalkers related to eye violence about March-April 2021z Dr Chawla Ophthalmologist diagnosed in April 2021 strabismus and dry eyes and refer me to specialist for further treatment needed.

"Thanks

"Dr. Samreen Riaz" (*Sic*.)

Based on plaintiff's suspicion of injury and wrongdoing by defendants in April 2021, the six-month deadline to file a government tort claim expired in approximately October 2021. (Gov. Code, § 911.2, subd. (a).) The one-year deadline for applying to present a late claim expired in April 2022. (*Id.*, § 911.4, subd. (b).) Plaintiff's application for relief under Government Code section 911.4 was not submitted until May 19, 2022. Because the application was not filed within the one-year deadline, the trial court had no ability to grant plaintiff's petition for relief under Government Code section 946.6, and the petition was appropriately denied. (See *id.*, § 946.6, subd. (c); *J.J. v. County of San Diego*, *supra*, 223 Cal.App.4th at p. 1221.)

## IV. Plaintiff's Tolling Arguments Fail

Plaintiff argues the trial court erred "by not calculating (a) emergency rule 9 [and] (b) mental [c]apacity for tolling." She relies on the Judicial Council of California's former Emergency Rule 9 (Emergency Rule 9), which was issued during the COVID-19 pandemic, and certain provisions of the Government Claims Act. We reject both arguments. Although it is not mentioned in the parties' briefing, we will also discuss the Governor's Executive Order N-35-20 (Mar. 21, 2020) and explain why it does not assist plaintiff.

### A. Emergency Rule 9

"As originally adopted on April 6, 2020, Emergency rule 9 tolled all statutes of limitation for civil causes of action until 90 days after the Governor declared that the state of emergency related to the COVID-19 pandemic is lifted." (*Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 401.) In May 2020, the rule was amended to state, in pertinent part: "Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled

17.

from April 6, 2020, until October 1, 2020." (Cal. Rules of Court, Appen. I: Emergency Rules Related to COVID-19, rule 9(a).)

The Judicial Council has explained that Emergency Rule 9 "does not apply to time limits on the submission of claims to government entities, such as those under Government Code section 911.2." (Circulating Order Mem. to Judicial Council of Cal., No. CO-20-09, May 22, 2020, p. 6, fn. 17.) As such, plaintiff's reliance upon Emergency Rule 9 is misplaced. Moreover, plaintiff's government tort claim of April 2022 and late claim application of May 2022 would still be untimely even if Emergency Rule 9 were applicable.

### B.     Executive Order N-35-20

Paragraph 11 of the Governor's Executive Order No. N-35-20, issued on March 21, 2020, declares: "The time for presenting a claim pursuant to Government Code section 911, et seq., is hereby extended by 60 days." As explained in *Coble v. Ventura County Health Care Agency* (2021) 73 Cal.App.5th 417, the Governor subsequently ordered an additional 60-day extension, resulting in a total extension of 120 days. (*Id*. at p. 422.) "Pursuant to Executive Order N-08-21, the 120-day extension applies to claims that accrued before June 30, 2021." (*Ibid*.)

The 120-day extension does not render as timely plaintiff's government tort claim of April 2022. Furthermore, the extension does not apply to the one-year deadline under Government Code section 911.4 for presenting an application for leave to present a late claim. (*Coble v. Ventura County Health Care Agency*, *supra*, 73 Cal.App.5th at pp. 426–427.)

### C.     Alleged Mental Incapacity

In calculating the one-year deadline to apply for leave to present a late government tort claim, any period during which the claimant was "mentally incapacitated" and did not have "a guardian or conservator of his or her person" is not counted. (Gov. Code,

§ 911.4, subd. (c)(1).) Plaintiff contends the trial court erred by finding she had "not established the requisite incapacity under [the applicable provisions]." Plaintiff relies, inter alia, on the fact she was detained in August 2020 pursuant to Welfare and Institutions Code section 5150 (the "5150 hold").

"[T]he type of disability which justifies relief … on the grounds of incapacity is an all-encompassing disability which prevents the claimant from even authorizing another to file a claim for the claimant." (*Barragan v. County of Los Angeles* (2010) 184 Cal.App.4th 1373, 1384.) As the trial court noted in its demurrer ruling, "'a person who is adjudged mentally ill and in need of hospital treatment under the Welfare and Institution[s] Code may nevertheless be capable of transacting business and carrying out his affairs, either during occasional lucid intervals or throughout his hospitalization.'" (Quoting *Hsu v. Mt. Zion Hosp.* (1968) 259 Cal.App.2d 562, 572–573.)

According to the pleadings and exhibits, the 5150 hold was effectuated by Visalia police on August 12, 2020. By September 2020, plaintiff had been released and was back at home. Plaintiff alleges that on September 29, 2020, a "[d]istrict attorney investigator came to [her] house [a] few minutes before [she] was leaving [home] to attend [a] court hearing" and left his business card. The exhibits contain a copy of an e-mail plaintiff sent to the investigator, wherein she apologized for having been in a rush and inquired about the purpose of his visit.

The pleadings and exhibits further indicate plaintiff interviewed for new jobs in February 2021 and sought medical treatment for her eye in April of the same year. Next, between April 27 and September 27, 2021, plaintiff sent e-mails to the California Department of Justice, the Tulare County Sheriff's Office, the Tulare County Counsel's Office, and the Clerk of the Tulare County Board of Supervisors concerning Deputy Rockholt and the other defendants. We therefore agree with the trial court regarding plaintiff's failure to demonstrate that her noncompliance with the statutory deadlines was due to an all-encompassing mental incapacity.

19.

## V.     Plaintiff's Equitable Estoppel Argument Fails

Plaintiff argues defendants should be equitably estopped from avoiding litigation based on the claim presentation requirements.  "The elements of equitable estoppel have been applied in the government claims context."  (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 656.)  "'Estoppel as a bar to a public entity's assertion of the defense of noncompliance arises when the plaintiff establishes by a preponderance of the evidence:  (1) the public entity was apprised of the facts, (2) it intended its conduct to be acted upon, (3) plaintiff was ignorant of the true state of facts, and (4) [plaintiff] relied upon the conduct to his [or her] detriment.'"  (*J.P. v. Carlsbad Unified School District* (2014) 232 Cal.App.4th 323, 333.)

"Equitable estoppel generally must be premised on some type of representation, ordinarily false, about a set of circumstances."  (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1072.)  At a minimum, the party to be estopped must have "prevented or deterred the filing of a timely claim by some affirmative act."  (*John R. v. Oakland Unified School District* (1989) 48 Cal.3d 438, 445.)  A public entity's general awareness of the plaintiff's grievances is not enough.  (*J.J. v. County of San Diego*, *supra*, 223 Cal.App.4th at p. 1219.)

In their briefing, defendants complain plaintiff's estoppel arguments are conclusory and insufficiently developed.  We agree.  "Claims of estoppel have been rejected … where the plaintiff cannot show calculated conduct or representations by the public entity or its agents that induced the plaintiff to remain inactive and not to comply with the claims-presentation requirements."  (*Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1045.)  Plaintiff corresponded in writing (e-mail) with the Tulare County Board of Supervisors and other government agencies multiple times during the relevant period.  We agree with the trial court that she has failed to show or explain how defendants did anything to prevent her from submitting a government tort claim "in the proper manner."

20.

**VI    Taxpayer Action (Code Civ. Proc., § 526a)**

Code of Civil Procedure section 526a "establishes the right of a taxpayer plaintiff to maintain an action against any officer of a local agency to obtain a judgment restraining or preventing illegal expenditure, waste, or injury of the estate, funds, or property of said agency." (*Schmid v. City and County of San Francisco* (2021) 60 Cal.App.5th 470, 495.) However, "waste" in this context "does not encompass the great majority of governmental outlays of money or the time of salaried governmental employees, nor does it apply to the vast majority of discretionary decisions made by state and local units of government." (*Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 482–483.) "Rather, it is more readily understood as 'a "useless expenditure of funds."'" (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 910.)

"To state a claim, the taxpayer must allege specific facts and reasons for the belief the expenditure of public funds sought to be enjoined is illegal." (*Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 714.) "A cause of action for waste of public funds cannot prevail if based upon innuendo and legal conclusions. … Otherwise, public officials performing their duties would be harassed constantly." (*Sagaser v. McCarthy* (1986) 176 Cal.App.3d 288, 310.) "Accordingly, 'the statute should not be applied to principally "political" issues or issues involving the exercise of the discretion of either the legislative or executive branches of government.'" (*Collins v. Thurmond*, *supra*, 41 Cal.App.5th at p. 910.)

The trial court's demurrer ruling includes a lengthy analysis of plaintiff's taxpayer claim. We agree with its assessment, which is well stated in the following:

> "[The Second Amended Complaint pleads] only allegations, innuendo and legal conclusions without specific, actual facts supporting the allegations. For instance, the acts Plaintiff complains of[,] including harassment of her, 'possible members of gangs' 'a well organized covert harassment system in place to discourage residents to reach the court,' 'stalking,' 'the County has repeatedly settled lawsuits resulting from violence, harassment, women stalking and other forms of misconduct

21.

perpetuated by possible deputy gang members,' that 'Tulare County not investigated possible use infrared/ technology or military grade weapon in the Tulare county for physical violence on plaintiff,' 'negligently licensing firearms,' and other allegations fail to meet the requirements necessary for a [Code of Civil Procedure section] 526a action."

"[And] there are no facts which support these claims, as required by 526a. Although Plaintiff pleads a list of dates [citation] and other allegations of actions by the County and specific law enforcement [citation], these remain the allegations, innuendo, and legal conclusion[s] that are insufficient to support this cause of action. The allegations generally state grievances by Plaintiff, disagreements as to policies and procedures, and the like, but do so in a conclusory manner ('well organized Covert harassment, threat of violence, assault, potential use of illegal weapon, battery to target public or participant in the court proceeding in order to obstruct justice and made them fear of their safety for exercising right to seek court;' 'organized crime;' 'silencing residents unlawfully.') Even the underlying facts of the July 2020 incident which form the starting point of this action are not pled with any specificity that would permit the Court to issue an injunction against such conduct in the future."

As stated in the operative complaint, "Plaintiff is alleging Tulare County taxpayer or public funds are illegally expended on criminal and unlawful activities against the public[,] particularly minorities [and] immigrants reaching Tulare superior court against County or many other unlawful activities within the County with the goal to obstruct justice." (*Sic*.) The focus is on the July 2020 incidents involving Deputy Rockholt, which essentially amount to one alleged instance of selective enforcement of security screening procedures (demanding the removal of footwear), and one instance of allegedly unprofessional conduct (finger pointing). Such allegations do not call into question the legality of funding the Tulare County Sheriff's Office.

The remaining issue is whether the trial court permissibly denied leave to amend. As noted, "the plaintiff bears the burden of proving an amendment would cure the defect." (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1251.) Plaintiff merely submits that she "will correct any defect as long as the defect [is] identified by the opposition," which is insufficient. "The plaintiff must identify some legal theory or state facts that can

22.

be added by amendment to change the legal effect of his or her pleading." (*Ibid.*; accord, *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 520, fn. 16; *HFH*, *Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 513, fn. 3.)  We thus conclude that leave to amend was appropriately denied.

## VII.   Federal Claims

Although generally ignored by the trial court, the viability of plaintiff's purported causes of action under title 42 United States Code section 1983 (section 1983) and title 42 United States Code section 1985 (section 1985) must be considered in our de novo review of the pleadings.  Because they are based on federal law, these purported causes of action are not subject to the claim presentation requirements of the Government Claims Act.  (*Williams v. Horvath* (1976) 16 Cal.3d 834, 842.)  The legal sufficiency of the claims is determined by federal law.  (See *Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1471; *Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 563.)

"The basic principles of federal law for pleading a cause of action are similar to California's.  Rule 8(a) of the Federal Rules of Civil Procedure (28 U.S.C.) provides that a pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief and a demand for the relief sought.  A motion to dismiss may assert a 'failure to state a claim upon which relief can be granted.'  (Fed. Rules Civ.Proc., rule 12(b)(6), 28 U.S.C.)" (*Martinez v. City of Clovis* (2023) 90 Cal.App.5th 193, 254.)  "A motion to dismiss pursuant to Federal Rules of Civil Procedure, rule 12(b)(6) (28 U.S.C.) is the equivalent of a demurrer." (*Metabyte*, *Inc. v. Technicolor S.A.* (2023) 94 Cal.App.5th 265, 274.)

Federal law differs from the California approach insofar as "a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" (*Estelle v. Gamble* (1976) 429 U.S. 97, 106.)  The

23.

federal standard also requires that a complaint "state a claim to relief that is *plausible* on its face." (*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 570, italics added.) "This facial plausibility standard is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (*Martinez v. City of Clovis*, *supra*, 90 Cal.App.5th at p. 254, quoting *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678.) "Determining whether a claim is plausible is a context-specific task requiring the court to draw on its judicial experience and common sense." (*Martinez*, at p. 254.)

## A.    Section 1983

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States. To state a claim under [section] 1983, a plaintiff must allege two essential elements:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." (*Long v. County of Los Angeles* (9th Cir. 2006) 442 F.3d 1178, 1185.)

Plaintiff's theory of liability under section 1983 is retaliation for the exercise of her First Amendment rights. "[T]he right of access to the agencies and courts to be heard … is part of the right of petition protected by the First Amendment." (*California Transport v. Trucking Unlimited* (1972) 404 U.S. 508, 513.) "To recover under [section] 1983 for such retaliation, a plaintiff must prove:  (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant *that would chill a person of ordinary firmness from continuing to engage in the protected activity*; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." (*Blair v. Bethel School Dist.* (9th Cir. 2010) 608 F.3d 540, 543, fn. omitted, italics added.)

Plaintiff's claim fails based on the above-italicized requirement. "[M]inor indignit[ies] and de minimis deprivations of benefits and privileges … do not give rise to a First Amendment claim. Rather, … adverse, retaliatory actions … must be of a nature that would stifle someone from speaking out." (*Blair v. Bethel School Dist.*, *supra*, 608 F.3d at p. 544.) This element is determined objectively, based on how "'a person of ordinary firmness'" would react, and without regard to the particular sensitivities or fortitude of the plaintiff herself. (*Mendocino Environmental Center v. Mendocino County* (9th Cir. 1999) 192 F.3d 1283, 1300; *Kariye v. Mayorkas* (C.D.Cal. 2022) 650 F.Supp.3d 865, 901.)

It cannot plausibly be alleged that "a person of ordinary firmness" would be dissuaded from attending court proceedings or otherwise exercising their right of petition merely because they were required to remove their shoes at a security checkpoint or because somebody pointed at them when they entered the courthouse. (Cf. *Kariye v. Mayorkas*, *supra*, 650 F.Supp.3d at p. 901 [allegations of two-hour detention at border checkpoint, during which plaintiff's belongings were searched and he was asked "his religious beliefs, practices, and associations," held insufficient to meet the "person of ordinary firmness" pleading standard].) As such, we conclude the pleadings fail to state a claim for relief against defendants Rockholt and Bonilla under section 1983.

"A municipality or other local government may be liable under [section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (*Connick v. Thompson* (2011) 563 U.S. 51, 60.) But such entities "are not vicariously liable under [section] 1983 for their employees' actions." (*Ibid.*) "Plaintiffs who seek to impose liability on local governments under [section] 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (*Ibid.*, citing *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 691.)

"A policy can be one of action or inaction." (*Long v. County of Los Angeles*, *supra*, 442 F.3d at p. 1185.) Both require "practices of sufficient duration, frequency and consistency." (*Trevino v. Gates* (9th Cir. 1996) 99 F.3d 911, 918.) In other words, liability "may not be predicated on isolated or sporadic incidents." (*Ibid*.) A policy of inaction, which is typically pleaded in terms of a failure to train or deliberate indifference, "'is a stringent standard of fault'" that ordinarily requires "[a] pattern of similar constitutional violations." (*Connick v. Thompson*, *supra*, 563 U.S. at pp. 61–62.) "Courts are required to 'adhere to rigorous requirements of culpability and causation,' lest 'municipal liability collapse[] into *respondeat superior* liability.'" (*Marshall v. County of San Diego* (2015) 238 Cal.App.4th 1095, 1119.)

The isolated incidents alleged to have occurred in July 2020 are plainly insufficient to support a section 1983 claim against the County of Tulare. Plaintiff's remaining allegations of stalking, harassment, and various other wrongdoing are too conclusory and attenuated to support a section 1983 claim against any of the defendants. For example, accepting as true that Deputy Rockholt pointed at plaintiff in July 2020 and plaintiff developed an eye problem in February 2021, those facts do not permit "the reasonable inference that the defendant is liable for the misconduct alleged." (*Ashcroft v. Iqbal*, *supra*, 556 U.S. at p. 678.) "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation.] Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (*Ibid*.)

## B.     Section 1985

"Section 1985 proscribes conspiracies to interfere with civil rights." (*Sanchez v. City of Santa Ana* (9th Cir. 1990) 936 F.2d 1027, 1039.) Plaintiff's attempted cause of action under section 1985 fails for two related reasons. First, such claims "must allege

facts to support the allegation that defendants conspired together.  A mere allegation of conspiracy without factual specificity is insufficient."  (*Karim-Panahi v. Los Angeles Police Dept.* (9th Cir. 1988) 839 F.2d 621, 626.)  Second, "'[t]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations.'"  (*Thornton v. City of St. Helens* (9th Cir. 2005) 425 F.3d 1158, 1168.)

Because plaintiff does not explain how the complaint could be amended to state a cognizable claim under section 1983, reversible error has not been shown.

## DISPOSITTION

The judgment is affirmed.  The parties shall bear their own costs on appeal.


PEÑA, Acting P. J.

WE CONCUR:


MEEHAN, J.


SNAUFFER, J.


27.